UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


TOCCI BUILDING CORPORATION OF        )
NEW JERSEY, INC,                     )
                                     )
      Plaintiff,                     )
                                     )        CIVIL ACTION NO.
v.                                   )        08-11402-DPW
                                     )
VIRGINIA SURETY COMPANY; TRAVELERS   )
INDEMNITY COMPANY; NATIONAL UNION    )
FIRE INSURANCE COMPANY OF PITTSBURGH; )
ACE AMERICAN INSURANCE COMPANY,      )
                                     )
      Defendants.                    )

MEMORANDUM AND ORDER
November 2, 2010

Through the motion now before me in this complex insurance litigation between Tocci Building Corporation of New Jersey, Inc. ("Tocci") and various of its primary and excess insurers, an excess carrier seeks dismissal of the claim against it.  In the underlying litigation, Tocci faces two lawsuits in New York state courts seeking relief for property and other damages that occurred when a housing development — for which Tocci was the general contractor — sustained serious water damage.  Tocci initiated this case against its primary insurers, alleging breach of the duty to defend and other related claims.  Tocci later amended the complaint to seek declaratory relief regarding the obligations of its excess insurers' to indemnify Tocci for any liability that may result from the underlying suits.  One of the excess carriers, National Union Fire Insurance of Pittsburgh

1

("National Union") has filed the motion now before me.  For
reasons set out more fully below, I find that Tocci has met its
pleading burden and will deny the motion.

## I. BACKGROUND

Because this is a motion dismiss, I must accept all
well-pleaded factual allegations in the complaint as true and
resolve any inferences in Tocci's favor.  *See Sanchez v. Pereira-
Castillo*, 590 F.3d 31, 41 (1st Cir. 2009).

Tocci's suit against its insurers arises from an action
filed against Tocci by the real-estate developer Archstone.  (Am.
Compl. ¶ 1.)  That litigation (the "Archstone litigation") is
currently pending in the Supreme Court of New York for Nassau
County.  (Am. Compl. ¶ 1; Memo., Ex. E. [hereinafter "Archstone
Compl."])  The Archstone litigation includes various contract and
torts claims stemming from a contract entered into by Tocci and
Archstone in 2002.  (Archstone Compl. ¶ 9.)  The contract at
issue set out the terms under which Tocci agreed to act as
general contractor for the construction of a large apartment
complex in Westbury, New York.  (Am. Compl. ¶ 13.)

Some time after June 2007, Archstone detected that the
Westbury complex "was suffering from pervasive water intrusion
and entrapment issues affecting each of the 20 apartment
buildings at the Project." (Archstone Compl. ¶ 22.)  Archstone
alleges extensive damage to the buildings, including to "exterior

sheathing, insulation, framing, flooring and carpeting materials, and interior wallboard at numerous locations throughout the project." (Archstone Compl. ¶ 23.) Furthermore, while performing initial repairs, Archstone became aware of other defects in the construction that required repair or replacement, including "defects associated with structural, plumbing, electrical and site work components." (Archstone Compl. ¶ 27.)

The damage was so severe that it forced Archstone to vacate the apartments and terminate the leases of all of its tenants. (Archstone Compl. ¶¶ 25–26.) The evictions led to a number of tenant suits for property and other damage arising from the water entrapment and eviction. (Archstone Compl. ¶ 28.) Archstone claims that the damages incurred are "in excess of $40 million." (Archstone Compl. ¶ 29.) Archstone first sued Tocci on January 17, 2008, and, on June 8, 2009, filed a second amended complaint for breach of contract, negligence, contractual indemnity, and action on performance bond. (Archstone Compl. at 11–13.) Archstone seeks to recover from Tocci all of its damages, plus interest, arising from the water entrapment and other defective work and products. (Archstone Compl. ¶ 37.)

While general contractor for the Westbury project, Tocci took out several insurance policies. Tocci entered into two consecutive contracts with Virginia Surety Company ("VSC") for primary, comprehensive general liability insurance running from

October 21, 2004, through October 21, 2005, and from October 21, 2005, through October 21, 2006 (collectively, the "VSC policies"). (Am. Compl. ¶ 14-15.) The policy limits for each of the one-year VSC policies were $2 million for each occurrence and $4 million in aggregate. (Am. Compl. ¶ 19.) To supplement this primary insurance, Tocci contracted with National Union to provide commercial umbrella liability insurance corresponding to the underlying primary VSC policies. (Am. Compl. ¶¶ 35-36.) The National Union policies were effective during the same time periods as the VSC policies and listed the corresponding VSC policies as the relevant scheduled underlying insurance.[1] (Am. Compl. ¶¶ 35-36, 42-43.) The limit of both of the National Union policies' coverage was $10 million for each occurrence and $10 million for the annual aggregate. (Am. Compl. ¶¶ 40-41.)

Among other provisions, the National Union policies included a duty to indemnify Tocci as follows:

> We will pay on behalf of the Insured those sums in
> excess of the Retained Limit that the Insured becomes
> legally obligated to pay as damages by reason of
> liability imposed by law because of Bodily Injury,
> Property Damage or Personal Injury and Advertising
> Injury to which this insurance applies or because of
> Bodily Injury or Property Damage to which this

---

[1]Tocci did not renew its policies with VSC and National Union after October 2006 and instead contracted with other insurance providers. These subsequent primary and excess providers are also defendants in this case. National Union is the only excess insurer that has filed a motion to dismiss for failure to exhaust the primary insurance limits. Another excess carrier, Everest National Insurance Company, was dismissed from this case because it was a non-diverse party.

insurance applies assumed by the Insured under an
Insured Contract.

(Memo., Ex. C at NU04-004; Memo., Ex. D. at NU05-040.)  The

National Union policies defined the retained limit as:

> 1. the total applicable limits of Scheduled Underlying
> insurance and any other applicable Other Insurance
> providing coverage to the Insured; or

> 2. the Self Insured Retention applicable to each
> Occurrence that results in damages not covered by the
> Scheduled Underlying Insurance nor any applicable Other
> Insurance providing coverage to the Insured.

(Memo., Ex. C at NU04-025; Memo., Ex. D. at NU05-041.)  The self

insured retention for each occurrence under the National Union

policies is $10,000.  (Memo, Ex. C at NU04-001; Memo., Ex. C. at

NU04-001.)

Tocci tendered the Archstone litigation for defense to

National Union in January 2008.  (Am. Compl. ¶ 44.)  Tocci

contends National Union has failed to take a coverage position or

to participate in settlement discussions regarding the Archstone

litigation.  National Union has maintained that it has no duty to

take any action regarding the Archstone litigation unless and

until the VSC policies are exhausted.

Tocci first filed suit against VSC and The Travelers

Indemnity Co., Tocci's other primary insurer during the Westbury

project, on July 15, 2008, in Massachusetts Superior Court in

Middlesex County.  That case was removed to this court in August

2008.  Tocci amended its complaint on June 29, 2010, to include

declaratory judgment claims against its excess and umbrella insurers, including National Union.  (Am. Compl.)  National Union responded by moving to dismiss the claim against it.

## II. ANALYSIS

National Union argues that Tocci's declaratory judgment must be dismissed on two interrelated grounds.  First, National Union contends that, as an excess insurer in this case, it need not be involved in the litigation until VSC's policies have been exhausted.  Because there is no live controversy until the VSC policies are exhausted, National Union argues, there is no "actual controversy" necessary to sustain a declaratory judgment action.  Second, National Union maintains that Tocci has failed to plead that there is any possibility that VSC's policies will be exhausted because the Archstone complaint does not allege any damages covered by the VSC policies.  Consequently, National Union maintains, its own policy can never be triggered because the VSC policies will never exhaust.  For its part, Tocci argues that it has adequately pleaded a claim under VSC's policies and that, in any event, National Union's policies are umbrella liability plans that may cover certain claims not covered by the VSC policies.

I interpret National Union's motion to dismiss as raising two grounds for dismissal: (1) lack of jurisdiction on ripeness grounds and (2) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  I will address each ground in turn.

A.   Ripeness

An action for declaratory judgment "enable[s] litigants to clarify legal rights and obligations before acting upon them." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995).   It has long been settled that "[f]ederal courts retain substantial discretion in deciding whether to grant declaratory relief."   *Id.*   However, an action seeking a declaratory judgment must present an "actual case or controversy" within the meaning of Article III of the United States Constitution.[2]   *Id.* at 535.   This ripeness requirement exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."   *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977).   The party seeking a declaratory judgment bears the burden of establishing that the district court has jurisdiction.   *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993).

The First Circuit has established a two-part ripeness

---

[2]A declaratory judgment action is procedural only.   *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007).   As such, the justiciability of Tocci's Count VIII is properly considered under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, rather than under Massachusetts' Declaratory Judgment Act, Mass. Gen. Laws ch. 231A.   *See Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases.   While state law must determine the substantive rights and duties of the parties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law.").

inquiry: "First, the court must consider whether the issue presented is fit for review. . . . [Then] the court [must] consider the extent to which hardship looms — in an inquiry that typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties." *Ernst & Young*, 45 F.3d at 535 (citations and internal quotation marks omitted). There is no definition of the required showing for each prong of the test, but "both prongs . . . ordinarily must be satisfied in order to establish ripeness." *Id.* The First Circuit, however, has "acknowledge[d] the possibility that there may be some sort of sliding scale under which, say, a very powerful exhibition of immediate hardship might compensate for questionable fitness, . . . or vice versa." *Id.*

    1.   <u>Fitness</u>

With respect to fitness, "the critical question . . . is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Id.* at 536 (quoting *Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't*, 973 F.3d 18, 20 (1st Cir. 1992)). However, "[t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citations omitted). Actions for declaratory judgment in the insurance context nearly always depend upon several contingencies — whether the insured will be found liable, the

extent of coverage, the size of any potential damage award or settlement, etc.  As such, "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real."  *Id.* (citation and internal quotation marks omitted).  Consequently, courts have found that "whether an insurer is liable on a policy issued to an insured for injuries sustained by a third party" is "one common to typical disputes over insurance coverage" and ripe for adjudication in declaratory judgment actions in federal court.  *Twin City Fire Ins. Co. v. Innovative Aftermarket Sys, L.P.*, 597 F. Supp. 2d 295, 300 (D. Conn. 2009); *see also Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 30 (D. Mass. 2000) ("Issues of coverage under insurance policies, including questions concerning the meaning of language in an insurance policy, are often decided by means of a declaratory judgment action." (citing *Thattil v. Dominican Sisters of Charity of Presentation of Blessed Virgin, Inc.*, 613 N.E.2d 908, 910 n.6 (Mass. 1993))).  Courts have similarly held, "[i]n the context of excess insurance policies, that the liability of an excess insurer is contingent does not *per se* defeat jurisdiction over a declaratory judgment."[3]  *UnitedHealth*

---

[3]The parties dispute whether National Union's policies provide only excess coverage or contain some form of "drop-down" coverage for certain claims not covered by VSC's policies.  Tocci has not alleged in its Amended Complaint any applicable "drop-down" coverage in this case.  Tocci seeks a declaratory judgment stating only that "National Union has a duty to indemnify Tocci

*Grp., Inc. v. Lexington Ins. Co.*, No. Civ. 05-1289 DSDSRN, 2006
WL 695523, at *3 (D. Minn. Mar. 17, 2006).

In determining whether a declaratory judgment action
involving an excess insurer is ripe, "courts should focus on 'the
practical likelihood that the contingencies will occur.'"
*Associated Indem.*, 961 F.2d at 35 (quoting 10A C. Wright *et al.*,
Federal Practice and Procedure § 2757 (2d ed. 1983)); *see also*
*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d
Cir. 2001) (*per curiam*) (affirming the standard laid out in
*Associated Indemnity*); *Raytheon*, 123 F. Supp. 2d at 30–31
(following the *Associated Indemnity* standard).  The only
Massachusetts state court decision that research has identified
as addressing the justiciability of excess insurer's liability,
based on contingent events, applied the *Associated Indemnity*
standard.  *See Hoechst Celanese Corp. v. Liberty Mut. Ins. Co.*,
No. Civ. A. 90-4369, 1999 WL 20522, at *2 (Mass. Super. Ct. Nov.
24, 1998).  In applying the standard laid out by the Second
Circuit in *Associated Indemnity*, the court in *Hoechst Celanese*
observed that "absolute proof that an excess insurer's policies
will be triggered is by no means required in order to establish a

---

for any settlement or judgment of the underlying action in excess
of the primary limits of insurance."  (Am Compl. ¶ 85.)
Accordingly, for the purposes of the ripeness inquiry only, I
will treat National Union as an excess insurer.

ripe controversy." *Id.* (citation and quotation marks omitted).[4]

In undertaking the "practical likelihood" analysis, courts have often compared the amount claimed against the insured to the attachment point of the relevant excess insurance as a method for determining whether there is a "reasonable likelihood that the claims will mature as to that [excess insurer]." *Raytheon*, 123 F. Supp. 2d at 30 (citation and internal quotation marks omitted); *see also Md. Cas. Co. v. W.R. Grace & Co.*, No. 88 CIV. 2613, 1996 WL 306372, at *3 (S.D.N.Y. June 7, 1996) ("[T]he Court can compare the current evidence on exhaustion of underlying insurance to the various attachment points of the moving defendant-insurers' policies to determine if there is a reasonable likelihood - given the facts and circumstances of this case — that [the insured] will reach those attachment points."). In conducting this inquiry, however, "there is no precise formula

---

[4]National Union suggests that because Massachusetts law does not obligate an excess insurer to defend or indemnify an insured until the primary coverage has been exhausted, an excess carrier has no duty to participate in any litigation until exhaustion occurs.  While the legal proposition that National Union has no duty to defend or indemnify before exhaustion is indeed well settled, it is "not particularly instructive on the issue of ripeness" as a matter of federal law.  *See RSUI Indem. Co. v. Enbridge (U.S.) Inc.*, No. H-08-1807, 2008 WL 5158179, at *2 (S.D. Tex. Dec. 9, 2008).  To the degree National Union argues that it should not as a matter of law be obligated to defend a declaratory judgment action by its insured until the primary insurance is exhausted, I find the federal law of ripeness in the declaratory judgment context to be to the contrary.  As I noted at the hearing on its motion, National Insurance may be able to create a bar to a declaratory judgment action until exhaustion is completed by including such a provision in its insurance contract, but it has not done so.

or line of demarcation, as each case presents unique facts and circumstances." *Md. Cas. Co.*, 1996 WL 306372, at *3.

Archstone claims damages that exceed $40 million. (Am. Compl. ¶ 29.) The parties are in agreement that VSC's policy limits are $2 million per occurrence and $4 million in aggregate per year. Even if the $40 million is equally divided between the three relevant years of the project, $13.3 million would be at issue for each year. That far exceeds VSC's policy limit either per occurrence or in aggregate. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir. 1992) ("Were there only a 10 percent chance of its obtaining a judgment in excess of those limits . . . the actuarial value of its claim against [the excess insurer] would still be substantial."). Although there has not been final resolution of the question whether Archstone's claims fall within VSC's policy coverage,[5] it appears from the Amended Complaint that there is a reasonable likelihood that the relevant claims will exceed the VSC policies' limits. Consequently, there is a reasonable likelihood that National Unions' policies would be triggered, indeed, potentially exhausted as well. *See Associated Indem.*, 961 F.2d at 35–36 (noting that inflation and potential error could increase the total settlement above the $25 million limit even though the

---

[5] On August 5, 2009, I did grant summary judgment to Tocci against VSC, holding that VSC has a duty to provide a defense for Tocci. Tocci and VSC had since settled the several claims brought against VSC concerning breach of the duty to defend.

estimated remediation would be only $15 million); *Clark Constr. Grp., Inc. v. Eagle Amalgamated Serv., Inc.*, No. 01-2478, 2005 WL 946911, at *3 (W.D. Tenn. Mar. 9, 2005) (finding a practical likelihood of exceeding the $1 million policy limit given that the underlying claim was for more than $1 million); *cf. Md. Cas. Co.*, 1996 WL 306372, at *4 (granting motion to dismiss as to defendant-excess insurers whose policies had attachment points greater than $12 million but denying the motion as to those with lesser attachment points); *Hoechst Celanese Corp.*, 1999 WL 20522, at *2 (dismissing the claim because the expected damages totaled only $7.3 million, and the excess insurance attached at $16 million).

That the insured has not yet proven with certainty that the primary coverage extends to the claims against it does not render the claim unripe. *See Bankers Trust*, 959 F.2d at 681 (denying the motion to dismiss because the injured third party "has sued for $30 million and there is no suggestion that that is a grossly inflated estimate of its loss, *should it be able to establish liability*" (emphasis added)). Courts have refrained from making a detailed examination of the policy terms and exclusions when determining whether there is a "practical likelihood" that the primary limit could be exceeded. *See id.; UnitedHealth Grp.*, 2006 WL 695523, at *4. Such an inquiry, courts have found, is better left to a later stage in the litigation. *See Raytheon*,

123 F. Supp. 2d at 28-29.

In considering whether a declaratory judgement claim against an excess insurer presents an actual controversy, courts have also looked to whether the excess insurer contests the substantive merits of the primary carrier's coverage. *See, e.g., E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 853 F. Supp. 98, 102 (S.D.N.Y. 1994), *aff'd*, 241 F.3d at 176. This is because, if an excess insurer disputes whether the underlying primary insurance covers the damages alleged against the insured, the existence of such a dispute is "at least obliquely contrary to the argument that [it] ha[s] no interest in the outcome" of the present litigation. *See id.* (noting that when the excess carriers "joined in the contest of the substantive issues in the case" it undermined their argument that there exists no live controversy involving the excess carriers); *see also Clark Constr. Grp.*, 2005 WL 946911, at *3 (noting that a dispute regarding the coverage of the excess policy is a controversy, and a declaratory judgment would "clarify the legal relations in issue by determining [the excess carrier's] responsibility for Plaintiff's impending liability"). Given that National Union's substantive argument of non-coverage in many ways "mirrors" VSC's argument of non-coverage, which plainly is justiciable, it appears that "a real disagreement" exists between National Union and Tocci. *See Bankers Trust Co.*, 959 F.2d at 681.

Likewise, National Union expends considerable effort here in arguing that VSC's policies do not cover Archstone's claimed damages and that a variety of exclusions in the VSC policies would preclude indemnification by either VSC or National Union. Indeed, in its memorandum of law in support of its motion to dismiss, National Union explicitly "reserves the rights to file a separate Motion for Summary Judgment, addressing [exclusions from coverage included in the National Union policies], and arguing that the National Union Policies do not provide [that] coverage is available to Tocci for the claims in the [Archstone] Complaint."

The nature of the briefing on the motion before me demonstrates that there is an actual controversy regarding the terms and coverage of National Union's policies. Because the interpretation of insurance policy terms and coverage is a matter of law appropriate for judicial resolution, Tocci's action for declaratory relief against National Union is ripe for adjudication. *See Ruggiero Ambulance Serv., Inc. v. Nat'l Grange Ins. Co.*, 724 N.E.2d 295, 298 (Mass. 2000) (noting that the scope of coverage of an insurance policy is a question of law suitable for resolution by the court); *see also UnitedHealth Grp.*, 2006 WL 695523, at *4 (finding a declaratory judgment claim against an excess carrier ripe because whether the thirty-five claims denied by the primary insurer were covered by that insurance was a question of law that the court could decide).

15

For these reasons, Tocci's declaratory judgment claim against National Union is fit for resolution by this court.

        2.   Hardship

In determining hardship, "[t]he key question involves the usefulness of a declaratory judgment, that is, the extent to which the desired declaration 'would be of practical assistance in setting the underlying controversy to rest.'" *Ernst & Young*, 45 F.3d at 537 (quoting *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994)).  Alternatively stated, the question is whether denying a declaratory judgment mechanism will create a hardship for one or more parties. Consequently, "the greater the hardship, the more apt a court will be to find ripeness." *Id.* at 536.

The complexity and scope of Archstone's claims against Tocci suggest that National Union's involvement in the present litigation would be of significant "assistance in setting the underlying controversy to rest." *Id.* at 537.  In a complex insurance case such as the one at issue here, which includes multiple primary and excess insurers covering different claims over differing periods of time, it is fundamentally practical for the parties and beneficial for purposes of judicial efficiency to have all of the implicated insurers present and participating. Proceeding without an insurer, by contrast, would hinder or delay comprehensive settlement negotiations and impede resolution of the case.  *See Bankers Trust Co.*, 959 F.2d at 682 (noting that by

16

keeping an excess carrier in litigation despite the contingencies at issue, a court can hold off on the declaratory action to see if the case becomes moot or, alternatively, "accelerate the resolution of this case in order to facilitate a settlement of the other [underlying] one").

National Union's indemnification responsibility is a key variable in this overall dispute; its presence in this case is critical to the resolution of all related cases.  National Union has proved unwilling to participate voluntarily in dispute resolution related to the Westbury project, and its absence from this case would work a hardship on all of the parties attempting to resolve the underlying claims.

An additional relevant hardship can be a "concern that [the insured] will be forced to re-litigate the issues already decided in this case" against the excess insurer.  *See Md. Cas. Co.*, 1996 WL 306372, at *6; *see also UnitedHealth Grp.*, 2006 WL 695523, at *4 (noting the hardship of litigating against the same excess insurer "issues which could have been conclusively determined in this lawsuit").  Should any judgment or settlement against Tocci exceed the $2 million limit on VSC's policies ($4 million in total for both years), Tocci would undoubtedly then seek payment by National Union on those claims.  In the absence of privity between VSC and National Union, principles of res judicata would nevertheless presumably permit National Union to relitigate issues on which Tocci prevailed against VSC.  The uncertainty and

duplicative costs of any such re-litigation would constitute a
significant hardship not to mention an unnecessary drain on
judicial resources.

     3.   Conclusion

Tocci's claim for declaratory judgment regarding National
Union's obligations under its insurance policies is fit for
review and ripe for resolution by this court.  National Union's
absence from this suit would result in considerable hardship for
Tocci and for the other insurers involved in this litigation.
Accordingly, I am satisfied that Tocci has adequately established
this court's jurisdiction over the claim.

     B.   Failure to State a Claim (Rule 12(b)(6))

National Union argues that Tocci has failed to state a claim
for which relief may be granted because it has not pleaded
"specific, plausible facts" that VSC's policies would indemnify
Archstone's claims against Tocci or, therefore, that VSC's
policies would be exhausted and trigger National Union's
policies.  More specifically, National Union argues that the many
exclusions from coverage contained in VSC's policies preclude
coverage of Archstone's claims by either VSC or National Union.
Tocci disagrees, asserting that its pleadings were sufficient and
that the VSC exclusions are not applicable to Archstone's claims.
National Union's substantive arguments regarding the
applicability of VSC's policy exclusions are premature and more
appropriately raised in a motion for summary judgment.

Additionally, Tocci has alleged facts sufficient to make out its claim against National Union and survive the pleadings requirements.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), while I must "take all the factual allegations in the complaint as true," I "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 1960 (2009)) (internal quotation marks and citations omitted).  The First Circuit, interpreting the Supreme Court's decision in *Iqbal*, has established "two principles [to] guide our assessment of the adequacy of the plaintiff's pleadings."  *Id.* at 268.  First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). The First Circuit further recognized that this inquiry is "context-specific" and requires the court "to draw on its judicial experience and common sense." *Sanchez*, 590 F.3d at 48 (quoting *Iqbal*, 129 S. Ct. at 1950).

National Union argues that, in Count VIII of the Amended Complaint, Tocci merely recites a conclusory statement of law

19

that, under *Iqbal*, is not sufficient to plead a "plausible claim
for relief."  National Union fails to take into consideration the
entirety of the Amended Complaint.  In the Amended Complaint,
Tocci identifies the relevant National Union policies and quotes
language from the policies that indicates that National Union's
policies provide excess indemnification over VSC's primary
policies.  (Am. Compl. ¶¶ 35-44.)  Tocci lays out the policy
limits and, when describing VSC's policies, provides the
appropriate attachment points of the excess insurance provided by
National Union's policies.  (Am. Compl. ¶¶ 19, 40-44.)  VSC's
alleged coverage is also described in detail in the Amended
Complaint. (Am. Compl. ¶¶ 14-27.)  Tocci's claim against National
Union thus contains more than mere conclusory statements of law.

     National Union also argues that it is unclear that any
damage took place prior to the expiration of National Union's
policies in October 2006.  (Memo. at 13.)  Archstone became aware
of the water intrusion and resulting damage sometime after June
2007.  (Archstone Compl. ¶ 22.)  However, it is uncertain at what
point prior to that date the water intrusion occurred or what
caused the water intrusion.  It is clear, however, that the
construction of the Westbury complex was largely complete before
National Union's 2005-2006 policy expired and that some tenants
had established residency as early as 2005.  (Aug. 5, 2009 Hr'g
Tr. at 8, 23-24.)  It is plausible, therefore, that the water

intrusion — or the cause of the water intrusion — occurred or began prior to October 2006.  Residual uncertainty regarding the date of any occurrence relevant to Archstone's claims, therefore, does not provide grounds for granting this motion to dismiss.

The bulk of National Union's argument rests upon exclusions contained in VSC's primary policies.  National Union contends that, by virtue of these extensive exclusions, VSC's policies do not cover Archstone's claims against Tocci.  National Union discusses ten exclusions in varying degrees of detail.  While many of these exclusions may well prove to exclude some or all of the damages claimed by Archstone, legal resolution of the applicability of those exclusions is not proper in the context of a motion to dismiss.  *See Raytheon*, 123 F. Supp. 2d at 28 ("[W]hile there may be policy provisions and facts which would support a summary judgment ruling later on, these 'facts' do not have to be included in the complaint.").

An insurer denying coverage under a policy has the duty to prove any affirmative defenses, including the application of any policy exclusion.  *See U.S. Liab. Ins. Co. v. Selman*, 70 F.3d 684, 688 (1st Cir. 1995) (stating that after the insured establishes that the alleged damages were within the ambit of the policy, the burden shifts to the insurer "to prove a defense to coverage, say the applicability of a policy exclusion or the insured's failure to comply with conditions precedent"); *see also*

21

*McGuinnis v. Aetna Life & Cas. Co.*, 494 N.E.2d 1322, 1323 (Mass. 1986).  However, "[w]hether either party will be able to meet their burden is better resolved at a later stage in the proceeding." *Raytheon*, 123 F. Supp. at 29-30.  Given the number of disputed facts and provisions in both the National Union and VSC policies, it is inappropriate to interpret those policies or provisions at this time because the level of detail required to interpret the relevant policies "exceeds any requirement of notice pleading."  *Id.* at 29.

### III. CONCLUSION

For the foregoing reasons, I find that Tocci's claim for declaratory relief presents an adequately pled actual controversy ripe for adjudication by this court.  The motion to dismiss (Dkt. No. 131) is DENIED.


                    */s/ Douglas P. Woodlock*
                    DOUGLAS P. WOODLOCK
                    UNITED STATES DISTRICT JUDGE